# No. 17–1740

𝕴𝖓 𝖙𝖍𝖊

# 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘
## 𝕱𝖔𝖗 𝖙𝖍𝖊 𝕱𝖔𝖚𝖗𝖙𝖍 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

———————————

Damian Stinnie, et al., *Appellants*,

v.

Richard Holcomb, *Appellee.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(The Honorable Norman K. Moon)

———————————

## OPENING BRIEF OF APPELLANTS
———————————

Jonathan T. Blank
Tennille J. Checkovich
McGuireWoods LLP
Court Square Building
310 Fourth Street NE, Suite 300
Post Office Box 1288
Charlottesville, VA 22902
Ph: (434) 977-2509
Fax: (434) 980-2258
*jblank@mcguirewoods.com*
*tcheckovich@mcguirewoods.com*

Angela A. Ciolfi
Patrick S. Levy-Lavelle
Mario D. Salas
Legal Aid Justice Center
1000 Preston Avenue
Suite A
Charlottesville, VA 22903
Ph: (434) 529-1810
Fax: (434) 977-0558
*angela@justice4all.org*
*pat@justice4all.org*
*mario@justice4all.org*

Leslie Kendrick
580 Massie Road
Charlottesville, VA 22903
Ph: (434) 243-8633
Fax: (434) 924-7536
*kendrick@virginia.edu*

*Counsel for Appellants*

August 9, 2017

### CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, Plaintiffs-Appellants Damian Stinnie, Demetrice Moore, Robert Taylor, and Neil Russo state that, as individuals, they have no parent corporations or publicly held corporations that own ten percent or more of stock and that they are not aware of any publicly held corporation that has a direct financial interest in the outcome of this litigation.  Further, this case does not arise out of a bankruptcy proceeding.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ...........................................................................v

INTRODUCTION ........................................................................................1

JURISDICTIONAL STATEMENT .....................................................................4

ISSUES PRESENTED ....................................................................................5

STATEMENT OF THE CASE ..........................................................................6

I.    Summary of Facts ..........................................................................6

    A.    The allegations in the Complaint support a finding of jurisdiction .................................................................6

    B.    Additional Evidence in the Post-judgment Motions...................9

        1.    Documentation of the Virginia Judicial System confirms that license suspension for unpaid court debt is an administrative action, rather than a judicial order ................................................................9

        2.    The Debtors' court and DMV records confirm that license suspension for unpaid court debt is an administrative action, rather than a judicial order ..............................................................11

II.    Federal Court Proceedings .............................................................13

    A.    The Commissioner's Motion to Dismiss and Subsequent Opinion.................................................................14

    B.    The Debtors' Post-judgment Motions and the Commissioner's Motion to Strike..............................................16

SUMMARY OF ARGUMENT ..............................................................17

STANDARD OF REVIEW ................................................................20

    I.    This Court reviews a decision granting a motion to dismiss
        *de novo*..................................................................................20

    II.   This Court reviews a decision granting a motion to strike for
        abuse of discretion...............................................................22

    III.  This Court reviews a decision denying a Rule 59 or Rule 60
        motion for abuse of discretion..............................................22

ARGUMENT ................................................................................23

    I.    The District Court's decision granting the Motion to Dismiss
        was based on an erroneous legal interpretation of Va. Code
        § 46.2-395 and failed to accept as true the facts alleged in the
        Complaint concerning the process by which that statute is
        implemented .........................................................................23

        A.    The district court's legal interpretation of Va. Code
              § 46.2-395 was erroneous .........................................24

            1.    Payment of court debt is due thirty days after
                 sentencing, not immediately ...........................24

            2.    Suspension is triggered by the failure to pay
                 court debt within thirty days of sentencing,
                 not at the moment of conviction .....................25

            3.    Under the statute as interpreted by Virginia courts,
                 license suspensions do not occur until the
                 Commissioner implements the suspension thirty
                 days after nonpayment ....................................27

        B.    The Complaint alleges that suspensions are
              administratively implemented by the Commissioner,
              not ordered by the court ............................................29

II.     The *Rooker-Feldman* doctrine does not deprive the District Court of jurisdiction .................................................................31

       A.    Because the Debtors are not asking the District Court to review a state court judgment, the *Rooker-Feldman* doctrine does not apply ..............................................31

       B.    Even if the suspensions are viewed as final state court judgments, *Rooker-Feldman* does not apply because this is an independent constitutional challenge to a state statute ..............................................................35

III.    The Debtors have Article III standing...................................38

       A.    Causation/Traceability .................................................38

       B.    Redressability................................................................41

IV.    The Commissioner is not entitled to Eleventh Amendment immunity ...............................................................................46

V.     The District Court erred by granting the Commissioner's Motion to Strike..............................................................51

VI.    The District Court erred by denying the Debtors' Post-judgment Motions .......................................................54

CONCLUSION.............................................................................56

ORAL ARGUMENT STATEMENT ........................................56

CERTIFICATE OF COMPLIANCE........................................58

CERTIFICATE OF SERVICE .................................................59

ADDENDUM:  STATUTES INVOLVED ................................60

iv

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*281 Care Comm. v. Arneson*, 638 F.3d 621 (8th Cir. 2011)..............................47, 49

*Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir. 2003) ...............55

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).....................................................21

*Bennett v. Spear*, 520 U.S. 154 (1997) ....................................................................41

*Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014).....................................................50

*Carew v. Commonwealth*, 750 S.E.2d 226 (Va. Ct. App. 2013) .............................28

*Coleman v. Silver*, 939 F. Supp. 2d 27 (D.D.C. 2013) .............................................52

*Cty. of Grayson v. RA-Tech Servs., Inc.*, Civ. A. No. 7:13-CV-00384,
     2014 WL 971697 (W.D. Va. Mar. 12, 2014) .....................................................56

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)...................................36, 37

*D-D The Aquarium Sol. Ltd. v. Giesemann Lichttechnik und
     Aquaristik GmbH,* No. 1:14-CV-846 LMB/IDD, 2015 WL
     1516387, at *4 (E.D. Va. Apr. 1, 2015).............................................................56

*Doe v. Va. Dept. of State Police*, 713 F.3d 745 (4th Cir. 2013) ........................ 41-44

*Eberhardt v. Integrated Design & Const., Inc.*, 167 F.3d 861 (4th Cir.
     1999) ...................................................................................................................22

*EEOC v. Lockheed Martin Corp.*, 116 F.3d 110 (4th Cir. 1997) ...........................53

*El-Amin v. McDonnell*, No. 3:12-CV-00538-JAG, 2013 WL 1193357
     (E.D. Va. Mar. 22, 2013) ...................................................................................51

*Energy Recovery, Inc. v. Hauge*, 133 F. Supp. 2d 814 (E.D. Va. 2000) ...............21

*Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91 (4th Cir. 2011)................44

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).............32, 33

*Falwell v. City of Lynchburg*, 198 F. Supp. 2d 765 (W.D. Va. 2002)..............21, 53

*Fant v. City of Ferguson*, 107 F. Supp. 3d 1016 (E.D. Mo. 2015).........................34

*Finberg v. Sullivan*, 634 F.2d 50 (3d Cir. 1980).......................................................47

*Fox v. Mich.*, 173 F. App'x 372 (6th Cir. 2006).......................................................52

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149 (4th Cir. 2000) ...................................................................38, 39, 41

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)...................................................................................41

*Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228 (4th Cir. 2016) ..................................................................................................22

*Hutto v. S.C. Ret. Sys.*, 773 F.3d 536 (4th Cir. 2014) ............................................50

*Johnson v. Am. Towers, LLC*, 781 F.3d 693 (4th Cir. 2015)...................................20

*Jordahl v. Democratic Party*, 122 F.3d 192 (4th Cir. 1997) ...........................33, 36

*Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009) ......................................20, 55

*LaMar v. Ebert*, 681 F. App'x 279, No. 15-7668, 2017 WL 1040450 (4th Cir. Mar. 17, 2017)...................................................................37, 40

*Lance v. Dennis*, 546 U.S. 459 (2006).............................................................31, 32

*Libertarian Party v. Judd*, 718 F.3d 308 (4th Cir. 2013) ................................38, 40

*Lockhart v. United States*, 136 S. Ct. 958 (2016) ..................................................26

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......................................39, 43

*Mayfield v. NASCAR, Inc.*, 674 F.3d 369 (4th Cir. 2012) ......................................54

*McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010) ..........................................49

*Minn. Citizens Concerned for Life v. FEC*, 113 F.3d 129 (8th Cir. 1997) ...............................................................................................41

*Plummer v. Commonwealth*, 408 S.E.2d 765 (Va. Ct. App. 1991) .................*passim*

*Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592 (6th Cir. 2007) ......................................................................................................34

*Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818 (10th Cir. 2007) ......................................................................................................48

*Prentis v. Atlantic Coast Line,* 211 U.S. 210 (1908) ........................................36, 37

*Ray v. Judicial Corr. Servs.*, No. 2:12-02819, 2013 WL 5428360 (N.D. Ala. Sept. 26, 2013) ....................................................................34

*Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403 (4th Cir. 2010) ...................22

*Sabo v. Casey*, 757 F. Supp. 587 (E.D. Pa. 1991) ...................................................48

*Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991) ...............................................20

*S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324 (4th Cir. 2008) ...............46, 48, 49

*SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412 (4th Cir. 2015)................21

*Skinner v. Switzer*, 562 U.S. 521 (2011)....................................................32, 36, 37

*Summers v. Adams,* 669 F. Supp. 2d 637 (D.S.C. 2009) ...................................47, 48

*Thana v. Bd. of License Comm'rs*, 827 F.3d 314 (4th Cir. 2016) .........31, 32, 33, 35

*Thomas v. Bet Sound-Stage Rest.*, 61 F. Supp. 2d 448 (D. Md. 1999)....................52

*Trantham v. Henry Cty. Sheriff's Office*, No. 4:10-cv-58, 2011 WL 863498 (W.D. Va. Mar. 10, 2011).......................................................53

*United States v. North Carolina*, 180 F.3d 574 (4th Cir. 1999) ..............................55

*United States v. Stewart*, 311 U.S. 60 (1940) .........................................................25

*Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635 (2002) ........................33, 35

*Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316 (4th Cir. 2001) .................22

*Ex Parte Young*, 209 U.S. 123, 157 (1908) ......................................................*passim*

## Statutes

28 U.S.C. § 1291 ...................................................................................5

28 U.S.C. § 1331 ...................................................................................4

28 U.S.C. § 1343(a)(3) ...........................................................................4

42 U.S.C. § 1983 .................................................................................13

Va. Code § 18.2-259.1 ..........................................................................10

Va. Code § 19.2-354 .......................................................................*passim*

Va. Code § 46.2-200 .............................................................................46

Va. Code § 46.2-301 ........................................................................11, 27

Va. Code § 46.2-393 .............................................................................10

Va. Code § 46.2-395 .......................................................................*passim*

Va. Code § 46.2-411 .............................................................................44

## Rules

Fed. R. Civ. P. 12(b)(6)......................................................................14, 20

Fed. R. Civ. P. 12(f) .....................................................................16, 22, 52

Fed. R. Civ. P. 59 .....................................................................4, 16, 22, 55

Fed. R. Civ. P. 60 ................................................................4, 16, 22, 23

## Other Authorities

5A Wright & Miller, *Federal Practice & Procedure* § 1380, 647 (2d ed. 1990) .......................................................................................22

5B Wright & Miller, *Federal Practice & Procedure* § 1350 (3d ed.) ...................21

11 Wright & Miller, *Federal Practice & Procedure* § 2810.1 (3d ed.) .................22

## INTRODUCTION

Nearly a million Virginians are currently without a driver's license because of unpaid court debt. This equates to roughly one in six Virginia drivers who cannot legally drive to work, medical appointments, the grocery store, or anywhere else. Plaintiffs-Appellants Damian Stinnie, Demetrice Moore, Robert Taylor, and Neil Russo (collectively, the "Debtors") represent a class of persons whose licenses were suspended automatically when they failed to meet payment deadlines for court debt. Defendant-Appellee Richard D. Holcomb (the "Commissioner"), who was sued in his official capacity as the Commissioner of the Virginia Department of Motor Vehicles ("DMV"), suspended the Debtors' licenses without notice, a hearing, or consideration of inability to pay. The Debtors lost their licenses because they could not afford the court debt imposed on them. They allege that punishing them for their poverty offends the Fourteenth Amendment guarantees of due process and fundamental fairness, as well as equal protection under the law.

Virginia's license-for-payment scheme violates the Constitution in at least five ways. First, it violates due process and fundamental fairness by punishing those who owe money to the state for sheer inability to pay. Second, it strips the Debtors of a constitutionally protected property interest—their driver's licenses— without the safeguards of notice and a hearing. Third, it violates equal protection

by treating those willing but unable to pay more harshly than those willing and able to pay, when the only difference between them is their wealth.  Fourth, suspending licenses for delinquent court debt is not rationally related to legitimate state interests.  By siphoning away law enforcement resources and preventing the Debtors from earning a living, it undermines the state's asserted interests in advancing highway safety and prompting repayment.  Fifth, the license-for-payment scheme subjects the Debtors to harsher collection practices than those for civil debtors, in violation of equal protection.  The Department of Justice considered these issues to be sufficiently significant that it submitted a Statement of Interest of the United States "to assist the Court in considering the *important constitutional questions* presented."  (JA288 (emphasis added).)

In its Memorandum Opinion (the "Opinion"), the United States District Court for the Western District of Virginia (the "District Court") noted that the automatic suspension of driver's licenses for inability to pay court debt as alleged in the Complaint "may very well violate Plaintiffs' constitutional rights to due process and equal protection."  (JA608.)  Yet, despite these readily apparent constitutional violations, the District Court dismissed the Complaint for lack of jurisdiction.  Specifically, the District Court held that the case was barred by the *Rooker-Feldman* doctrine, the Debtors had failed to demonstrate standing, and the Commissioner was entitled to immunity.

2

The District Court's decision granting the Motion to Dismiss was based on an erroneous legal interpretation of Va. Code § 46.2-395 and a fundamental misunderstanding of the process by which that statute is implemented. Nonetheless, jurisdiction is present here under any view. The *Rooker-Feldman* doctrine does not apply because the Debtors bring an independent constitutional challenge to a state statute. Moreover, the Debtors have alleged standing. Their injuries are directly traceable to the Commissioner's conduct in implementing suspensions under Va. Code § 46.2-395, which cannot be accomplished legally without action by DMV. *See Plummer v. Commonwealth*, 408 S.E.2d 765, 765-66 (Va. Ct. App. 1991). Finally, the Commissioner is not entitled to immunity. Suspensions under Va. Code § 46.2-395 intimately involve DMV, which implements those suspensions and collects reinstatement fees. As such, the Commissioner is an appropriate Defendant in this action because he has the necessary "special relation" to the challenged statute sufficient to invoke the *Ex Parte Young* exception. 209 U.S. 123, 157 (1908).

Even though the Commissioner mounted a facial challenge to jurisdiction, the District Court based its jurisdictional rulings in part on findings concerning how the license-for-payment scheme works that directly contradict the allegations in the Complaint and are divorced from the reality of the Debtors' experiences. But by failing to accept the facts alleged in the Complaint as true, the District

3

Court erred. Moreover, by disputing and then disregarding the allegations in the Complaint that demonstrated jurisdiction, the District Court *sua sponte* turned the jurisdictional challenge into a factual challenge.

Yet, when the Debtors attempted to put forward evidence in support of their Motions to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59(e) and for Relief from Judgment or Order Pursuant to Fed. R. Civ. P. 60 (collectively, the "Post-judgment Motions") demonstrating the truth of their jurisdictional allegations and the mistakes of fact and related legal errors in the District Court's rulings, the District Court struck that evidence as outside the scope of a facial challenge to jurisdiction and then denied the Debtors' Post-judgment Motions without a hearing. By refusing to reconsider in the face of additional evidence setting forth pertinent facts responsive to the jurisdictional concerns expressed in its Opinion, the District Court permitted fictional jurisdictional bars to swamp the Debtors' otherwise meritorious claims. This Court should reverse and remand.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Nonetheless, on March 13, 2017, the District Court issued its Opinion and Order dismissing the Complaint for lack of jurisdiction. (JA538-73.) The Opinion was corrected on March 15, 2017. (JA574-608.) The Debtors filed Post-judgment Motions on April 10, 2017. (JA609-683.) Those motions

4

were denied in an Order entered on May 22, 2017.  (JA746-49.)  The Debtors filed

a timely Notice of Appeal on June 15, 2017.  (JA750-52.)  This Court has

jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.     Did the District Court err in its legal interpretation of Va. Code §

46.2-395 and by failing to accept as true the facts alleged in the Complaint

concerning the process by which that statute is implemented?

2.     Did the District Court err in applying the *Rooker-Feldman* doctrine to

bar the Debtors' claims where the Debtors are not asking the District Court to

review a state court judgment and are, instead, asserting an independent

constitutional challenge to Va. Code § 46.2-395 and the steps taken or not taken by

DMV in implementing that statute?

3.     Did the District Court err in holding that the Debtors lacked Article III

standing where the allegations in the Complaint clearly establish a genuine nexus

between the Debtors' inability to drive legally and the Commissioner's execution

or implementation of license suspensions under Va. Code § 46.2-395 such that the

declaratory and injunctive relief requested by the Debtors would redress many

harms suffered by the Debtors at the Commissioner's hands?

4.     Did the District Court err in holding that the Commissioner is entitled

to Eleventh Amendment immunity where the Debtors alleged that the

5

Commissioner has the necessary special relation to the challenged statute such that the *Ex Parte Young* exception applies?

5.     Did the District Court err in granting the Commissioner's Motion to Strike the Exhibits attached to the Debtors' Post-judgment Motions?

6.     Did the District Court err in denying the Debtors' Post-judgment Motions in light of the manifest errors of fact and law in its Opinion?

<u>STATEMENT OF THE CASE</u>

## I.     Summary of Facts

### A.     The allegations in the Complaint support a finding of jurisdiction.

Under Va. Code § 46.2-395(B), license suspension by DMV is automatic and mandatory for "failure or refusal" to pay court debt within the specified period (within thirty days of conviction or according to the terms of any court-ordered payment plan).  The Debtors are indigent Virginia residents whose driver's licenses were automatically and indefinitely suspended by the Commissioner for failure to pay court debt that they could not afford.  (Compl. ¶¶ 1-5, 39, 66, 103, 129, 152, 174, 179, 183, 205, 227, 251.)[1]  Both generally as to the class and also with respect to each individual Debtor, the Complaint specifically alleges the driver's licenses at issue were suspended *by the Commissioner* upon transmission

---

[1] Throughout this Brief, citations to paragraphs in the Complaint can be found at JA10-64.

of information from the court to DMV noting nonpayment of court debt.  (Compl. ¶¶ 39, 65-66 (Stinnie), 102-103 (Stinnie), 151-152 (Moore), 178-179 (Taylor), 205 (Taylor), 250-251 (Russo), 286-289.)

Suspension occurs automatically, without a hearing or any inquiry into the reasons for nonpayment or financial circumstances.  (Compl. ¶ 285.)  The court transmits a record of nonpayment to DMV either electronically or manually.  (Compl. ¶ 286.)  For individuals who owe in courts using an electronic system, the system defaults to noting nonpayment whenever a payment is due and no payment is entered.  (Compl. ¶ 287.)  In other words, the clerk must enter payment before the due date to prevent the system from signaling to DMV to suspend the individual's license.  (Compl. ¶ 288.)

When the transmission is received from the court, "the DMV employee follows data entry protocols to issue the order of suspension."  (Compl. ¶ 289.)  The Commissioner does not conduct a review of a person's financial condition or otherwise inquire as to the reasons for default at any point related to suspending a person's license for failure to pay.  (Compl. ¶ 294.)

The Commissioner holds the keys to reinstatement of licenses once suspended, but the Commissioner will not reinstate the Debtors' licenses unless they satisfy all court debt in all jurisdictions or they obtain payment plans from each court to which they are indebted.  (Compl. ¶¶ 40, 296-298); Va. Code §§

7

46.2-395(B), (D); Va. Code § 19.2-354. Reinstatement of a suspended license also requires an additional reinstatement fee of at least $145 payable to DMV. (Compl. ¶ 297.)

While Va. Code § 46.2-395(E) allows the Commissioner to issue restricted licenses for traveling to and from work or for other limited purposes, this process is cumbersome and not widely available. First, it requires that the Debtor seek and receive permission from every court to which money is owed. (Compl. ¶ 299.) Second, a restricted license is only valid for six months, making it nearly impossible for those who owe in multiple jurisdictions to qualify by stringing together overlapping periods of approval from each court. (Compl. ¶ 300.) Third, a restricted license is not available to those who are unemployed, including job-seekers, people whose disabilities prevent them from working, and people who are home caring for young children. (Compl. ¶ 301.)

Under Va. Code § 46.2-395(B), hundreds of thousands of Virginians have lost their licenses simply because they lack the financial means to pay court debt. (*See* Compl. ¶¶ 327, 377.) In 2015, DMV estimated that around 914,450 Virginians currently had their licenses suspended for court debt. (*Id*.) This deprives them of reliable, lawful transportation necessary to get to and from work, keep medical appointments, care for ill or disabled family members, and,

8

paradoxically, to meet their financial obligations to the courts.  (Compl. ¶¶ 31, 37, 157, 196, 212, 256-258, 327-328, 336-341, 347, 355-356.)

**B.     Additional Evidence in the Post-judgment Motions.[2]**

**1.     Documentation of the Virginia Judicial System confirms that license suspension for unpaid court debt is an administrative action, rather than a judicial order.**

Virginia's Judicial System website confirms that license suspension does not occur until thirty days have elapsed and no payment is received:

> **Post-Court Payments** (if paying AFTER your court date): Payments must be received within 30-days following your court date *to prevent the suspension* of your operator's/driver's license for failure to pay.

(JA641 (italics added).)  In fact, the use of the term "immediate" in Va. Code § 46.2-395(B) has been interpreted by the Virginia court system to mean within thirty days.  (*See* General District Court ("GDC") Manual, JA645 (indicating that "[t]he obligation for payment of fines and costs . . . is normally due within thirty days of trial, but deferred or the court shall establish installment payment agreements for those unable to make immediate payment").)

The Clerk for the Circuit Court of the City of Charlottesville confirms that there is no suspension order entered by the court.  (*See* JA648, Dugger Decl. ¶¶ 7,

---

[2] Even if this Court does not reverse the District Court's Order granting the Commissioner's Motion to Strike the documents discussed, this Court may take judicial notice of them pursuant to the Debtors' Motion for Judicial Notice filed contemporaneously herewith.

10-11.) When a person fails to pay court costs or fines, the electronic system used by all GDC and almost all of the 120 Circuit Courts in the Commonwealth transmits the record of nonpayment to DMV. (*See id.* ¶¶ 6, 7.) No clerk or judge enters an order of license suspension for failure to pay court costs or fines. (*Id.*) Nothing is maintained in the court file reflecting that a person's license has been suspended for nonpayment. (*Id.* ¶ 8.)

When DMV receives the electronic transmission that an account is in default, DMV, not the clerk or judge, suspends the account holder's license. (*Id.* ¶¶ 9-10.) If DMV were ordered to reinstate licenses suspended pursuant to Va. Code § 46.2-395, such injunctive relief would not conflict with any court-ordered suspension. (*Id.* ¶ 11.) By contrast, when a license is suspended or revoked pursuant to Va. Code § 46.2-393 (reckless driving) or § 18.2-259.1 (drug offenses), the judge enters an order suspending or revoking the license after a hearing on the underlying offense. (JA648-49, Dugger Decl. ¶ 12.)

In short, the license suspension for unpaid court debt is an administrative action, rather than a judicial order. This fact is underscored by the Commonwealth of Virginia Driver's License Reinstatement Form DC-30, which "documents payment of fines and costs after a defendant's driving privileges have been suspended by the court (*or by DMV as an administrative action*) for refusal or

10

failure to pay any fines, costs, restitution, or other monetary penalties." (*See* Circuit Court Clerks' Manual – Criminal, JA651 (emphasis added).)

      **2.**    **The Debtors' court and DMV records confirm that license suspension for unpaid court debt is an administrative action, rather than a judicial order.**

The Debtors' court and DMV records likewise demonstrate that their license suspensions occurred by operation of law executed by the Commissioner and required no court action except transmissions of data identifying delinquent accounts. One of Demetrice Moore's convictions illustrates this process. On April 7, 2016, the Chesterfield County GDC convicted Ms. Moore of driving with a suspended license. (*See* JA653; *see also* Compl. ¶ 150.) The court marked the box for "DRIVER'S LICENSE SUSPENDED," and hand wrote "90 d[ays]." (JA653.) This suspension arose as a result of her conviction for driving on a suspended license and is distinct from an indefinite suspension for failure to pay court debt under Va. Code § 46.2-395. (*Compare* Compl. ¶ 150, *with* Compl. ¶ 152.) After sentencing, the clerk's office set costs at $232. (Compl. ¶ 152; JA653.)

Significantly, the court took *no action* respecting Ms. Moore's driver's license in the event she did not pay the $232. (*See* JA653.) The court marked the box for Va. Code § 46.2-301 (suspension for driving on a suspended license) but left the box for Va. Code § 46.2-395 blank.[3] (*Id.*) Despite this lack of court action,

---

[3] Other form sentencing orders entered against the Debtors feature the same

the Commissioner executed a suspension of Ms. Moore's driver's license for

nonpayment under Va. Code § 46.2-395 after Ms. Moore failed to pay the costs

within thirty days.  (JA662; *see also* Compl. ¶ 152.)  The suspension issuance date

was recorded as May 13, 2016—six days after the thirty-day payment deadline,

and ostensibly the date the Commissioner processed the record of nonpayment.

(JA662.)

      Neil Russo's convictions in Fairfax County Circuit Court further illustrate

the distinction between the court's order at sentencing (after which Mr. Russo

became obligated to pay costs) and the subsequent license suspension carried out

by the Commissioner, which is an independent act.  For example, when the court

sentenced Mr. Russo for receiving stolen property, the Sentencing Order lists:

incarceration, suspended on the following conditions—(1) satisfactorily

completing one year of supervised probation, and (2) paying "all costs of this

case."  (JA668.)  The court made no reference to Mr. Russo's driver's license.

      The Clerk's Notice of Costs form subsequently notified Mr. Russo that

license suspension could follow *in the event of nonpayment* in the future.

(*Compare* Sentencing Order, JA667-69, *with* JA671 ("Your failure to pay . . . costs

. . . immediately, or as ordered by the court, *will* result in any or all of the

---

omission.  (*See, e.g.*, JA655 (ordering a fine and costs against Damian Stinnie by
marking appropriate boxes and entering amounts in blank fields, while leaving the
§ 46.2-395 box unmarked).)

following [including] . . . Suspension of your Driver's license . . . .") (typeface altered, emphasis added).)

Neither the court nor the clerk's office mentioned an existing suspension order. The court, speaking through the Sentencing Order, had nothing to say about license suspension at all. (*See* JA667-69.) Yet, on October 26, 2009, after Mr. Russo did not pay his costs on time, the Commissioner "issue[d]" a suspension of Mr. Russo's driver's license and backdated it to render the suspension "effective" September 14, 2009. (JA677.)

## II.    Federal Court Proceedings.

Virginia's license-for-payment scheme as implemented by the Commissioner violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The Debtors filed suit under 42 U.S.C. § 1983 on behalf of themselves and others similarly situated on July 6, 2016. (JA4; JA10-155.) The Debtors assert that Va. Code § 46.2-395 is unconstitutional as written and as implemented. (Compl. ¶¶ 41-42, 316-317, 399-450.) They seek injunctive and declaratory relief against the Commissioner in his official capacity for his actions in suspending their licenses. (Compl. ¶¶ 20-24 & Requested Relief.) Relief requested includes a declaratory judgment that the Commissioner's "policies, practices, and/or omissions" as described in the Complaint "are unlawful" and violate the Debtors' constitutional rights. (JA62.) The Debtors also sought

13

injunctive relief enjoining the Commissioner "from issuing or processing orders of driver's license suspension for unpaid court debt," requiring the removal of suspensions relating to court debt such that the driver's licenses of those for whom unpaid court debt is the only basis for suspension are reinstated, and enjoining the Commissioner from requiring reinstatement fees. (JA62-63.)

### A.    The Commissioner's Motion to Dismiss and Subsequent Opinion.

The Commissioner moved to dismiss. (JA156-203.) The Commissioner argued that the District Court lacked jurisdiction under *Rooker-Feldman* and that the Commissioner was entitled to immunity, but did not assert a lack of standing. (*See* JA174-90.) The Commissioner also asserted that the Complaint failed to state a cognizable claim pursuant to Fed. R. Civ. P. 12(b)(6). (JA190-200.) The Debtors opposed the motion. (JA208-65.) The Department of Justice submitted a Statement of Interest of the United States in opposition to the motion to dismiss "to assist the Court in considering the important constitutional questions presented." (JA288-309.)

In its Opinion, the District Court noted that automatic suspension of driver's licenses "may very well violate Plaintiffs' constitutional rights to due process and equal protection." (JA608.) Nonetheless, the District Court dismissed the Complaint, finding jurisdiction was lacking for three reasons, each of which was erroneous:

14

- The case is barred from federal court by the *Rooker-Feldman* doctrine, which "holds that federal courts (other than the Supreme Court) cannot hear challenges to state court orders . . . ." (JA576.)

- The Debtors lack standing because the unconstitutional license suspensions were not caused by the Commissioner such that the requested relief would not remedy the underlying suspensions. (*Id.*)

- The Commissioner is entitled to Eleventh Amendment immunity because he is "not sufficiently responsible for and associated with the suspensions[.]" (*Id.*)

In reaching these holdings, the District Court found that the Commissioner had asserted a "facial challenge" to the Complaint for lack of jurisdiction. (JA576.) Nonetheless, based on its interpretation of Va. Code § 46.2-395, the District Court made and relied on findings concerning the manner in which the statute is implemented that are contrary to the allegations in the Complaint. Specifically, the District Court found that every conviction involving the assessment of court debt immediately triggers a court-ordered suspension of the defendant's license that is a legal reality preexisting and independent of any involvement by the Commissioner. (JA584-86.)

15

**B.** **The Debtors' Post-judgment Motions and the Commissioner's Motion to Strike.**

The Debtors filed Post-judgment Motions pursuant to Rules 59(e) and 60 on April 10, 2017. (JA609-83.) In light of the District Court's *sua sponte* ruling on standing and its erroneous findings pertaining to implementation of Va. Code § 46.2-395 that failed to credit the facts alleged in the Complaint, the Debtors attached documentation to their Post-judgment Motions (collectively, the "Exhibits")[4] demonstrating that the facts alleged in the Complaint were accurate, the District Court's findings were erroneous and not consistent with the reality of court debt-related license suspensions, and the District Court had jurisdiction. (JA640-83.)

The Commissioner moved to strike the Exhibits under Fed. R. Civ. P. 12(f) on the grounds that consideration of the documents was not appropriate on motion to dismiss. (JA684-94.) In an Order entered on May 22, 2017, the District Court granted the Motion to Strike and then denied the Debtors' Post-judgment Motions. (JA746-49.) The District Court acknowledged that it could consult evidence outside the pleadings when assessing jurisdiction, but only when a challenge to

---

[4] Twelve exhibits were discussed in and meant to be attached to the Debtors' post-judgment briefing. (*See* JA612-39.) As a result of a clerical error, the twelfth exhibit was not attached. (*See* JA753-56.) By subsequent Stipulation, the parties have supplemented the record to include Exhibit 12 and agreed that it remains subject to the Motion to Strike and the Order granting that motion. (*See id*.)

16

jurisdiction was a factual one.  (JA747.)  After striking the Exhibits, the District

Court found that the *Rooker-Feldman* and immunity issues had been "fairly

litigated" on the Motion to Dismiss and that standing was sufficiently addressed in

prior briefing on mootness such that no further consideration was necessary.

(JA748-49 & n.4.)

The Debtors filed a timely Notice of Appeal on June 15, 2017.  (JA750-52.)

## SUMMARY OF ARGUMENT

The District Court's decision granting the Motion to Dismiss was based on

an erroneous legal interpretation of Va. Code § 46.2-395 and a fundamental

misunderstanding of the process by which that statute is implemented.  As a result,

the District Court misapplied the standard of review in deciding the Motion to

Dismiss and failed to accept the allegations of fact in the Complaint as true.

The District Court held that every conviction involving the assessment of

court debt *immediately* triggers a *court-ordered* suspension of the defendant's

license that is a legal reality pre-existing involvement by the Commissioner.  In

fact, under Va. Code § 46.2-395 as interpreted by the Virginia courts and as

alleged in the Complaint, license suspensions do not occur until the Commissioner

implements the suspension thirty days after nonpayment of court debt.  Payment is

due thirty days after sentencing, not immediately upon assessment.  The

17

suspension of the driver's license is triggered by the failure to pay within thirty days of sentencing, not at the moment of conviction.

The District Court's erroneous interpretation of Va. Code § 46.2-395 and its failure to credit the factual allegations in the Complaint infect each of its holdings on jurisdiction and require reversal. Nonetheless, even if the driver's license suspension process operated as posited by the District Court, none of the three jurisdictional bars applied by the District Court has a place here. The *Rooker-Feldman*, standing, and Eleventh Amendment immunity doctrines do not deprive the District Court of jurisdiction over the Debtors' independent constitutional challenge seeking to enjoin an administrative actor from enforcing the challenged statute.

First, the *Rooker-Feldman* doctrine does not apply because the Debtors are not challenging any state court judgment, including the underlying orders of conviction and assessment of fines and costs. Instead, the Debtors bring an independent constitutional challenge to a state statute. State administrative and executive actions, like those taken by the Commissioner in implementing driver's license suspensions, are not covered by the *Rooker-Feldman* doctrine.

Second, the Debtors have alleged standing. The allegations in the Complaint clearly establish a genuine nexus between the Debtors' inability to drive legally and the Commissioner's implementation of license suspensions under Va. Code §

46.2-395.  Even if the District Court's finding that it is the courts that issue

suspension orders is upheld, the Debtors' injuries are directly traceable to the

Commissioner's conduct in implementing the suspensions, which cannot be

accomplished legally without action by DMV.  *See Plummer*, 408 S.E.2d at 766.

As a result, the declaratory and injunctive relief requested would redress many of

the harms suffered by the Debtors.

Third, the Commissioner is not entitled to immunity.  Suspensions under Va.

Code § 46.2-395 intimately involve DMV, which implements and carries out

suspensions and collects reinstatement fees.  Indeed, the Commissioner is the

official whose agency oversees the licensure of drivers, and Va. Code § 46.2-395

references the Commissioner or DMV by name no less than *nine* times.  As such,

the Commissioner has the necessary "special relation" to the challenged statute

sufficient to invoke the *Ex Parte Young* exception.  209 U.S. at 157.

Fundamentally, this appeal is about whether an order directed to the

Commissioner would provide meaningful relief to the Debtors.  It would.  If the

Debtors are successful in proving that the suspension process is constitutionally

flawed, the District Court could declare Va. Code § 46.2-395 unconstitutional,

which would invalidate suspensions flowing from it.  Moreover, the District Court

could order the Commissioner to remove the unconstitutional suspensions from

DMV's database and enjoin the Commissioner from participating in future

19

enforcement of Va. Code § 46.2-395.  Removal of these suspensions would free most Debtors from the terrible dilemma they now face: drive illegally and risk incarceration, or stay home and fail to meet the needs of their families.

For these reasons, as well as those set forth below, the District Court erred when it dismissed the Complaint.  That error was further compounded by the District Court's subsequent abuse of discretion in granting the Commissioner's Motion to Strike the Exhibits and denying the Debtors' Post-judgment Motions. This Court should reverse and remand for further proceedings.

<u>STANDARD OF REVIEW</u>

I.    **This Court reviews a decision granting a motion to dismiss *de novo*.**

This Court reviews the District Court's decision granting the Motion to Dismiss *de novo*.  *Johnson v. Am. Towers, LLC,* 781 F.3d 693, 706 (4th Cir. 2015). This *de novo* standard also applies with respect to review of the District Court's interpretation of Virginia statutes.  *Salve Regina Coll. v. Russell*, 499 U.S. 225, 239 (1991).  District courts are owed no deference with respect to interpretations of state law.  *Id*. ("[T]he bases of state law are as equally communicable to the appellate judges as they are to the district judge.").

When a defendant asserts a facial challenge to subject matter jurisdiction, the plaintiff retains the same protections as in a Rule 12(b)(6) motion to dismiss. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  "To survive a motion to

20

dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts as true well-pleaded allegations and construes the complaint in the light most favorable to plaintiff, drawing all reasonable inferences from the allegations in the plaintiff's favor. *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015). Although a court need not consider legal conclusions (*see* Op., JA577 & n.1), it cannot "recast[] 'plausibility' into 'probability'" by "favoring its perception of the relevant events over the narrative offered by the complaint." *SD3*, 801 F.3d at 430.

Where, however, the defendant or, here, the District Court challenges the factual basis for subject matter jurisdiction, the court "may also consider evidence outside the pleadings . . . ." *Falwell v. City of Lynchburg*, 198 F. Supp. 2d 765, 772 (W.D. Va. 2002); 5B Wright & Miller, *Federal Practice & Procedure* § 1350 (3d ed.) ("[T]he pleader may establish the actual existence of subject matter jurisdiction through extra-pleading material."). The moving party should prevail on a factual challenge "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Energy Recovery, Inc. v. Hauge*, 133 F. Supp. 2d 814, 817 (E.D. Va. 2000) (quotations and citation omitted).

21

## II.    This Court reviews a decision granting a motion to strike for abuse of discretion.

Rule 12(f) motions are generally viewed with disfavor and are to be granted

infrequently "because striking a portion of a pleading is a drastic remedy . . . ."

*Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting

5A Wright & Miller, *Federal Practice & Procedure* § 1380, 647 (2d ed. 1990));

(*see also* n.7, *infra* (noting Rule 12(f) applies only to pleadings and was not

applicable to the Post-judgment Motions)).  This Court reviews the decision

granting the Motion to Strike for abuse of discretion, and will "overturn an

evidentiary ruling that is arbitrary and irrational."  *Gentry v. E. W. Partners Club

Mgmt. Co.*, 816 F.3d 228, 239 (4th Cir. 2016) (quotation and citation omitted).

## III.   This Court reviews a decision denying a Rule 59 or Rule 60 motion for abuse of discretion.

This Court reviews the decision denying the Debtors' Post-judgment

Motions for abuse of discretion.  *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d

403, 407 (4th Cir. 2010) (Rule 59(e) motion); *Eberhardt v. Integrated Design &

Const., Inc.*, 167 F.3d 861, 869 (4th Cir. 1999) (Rule 60(b) motion).  Grounds for

amending the judgment may include that an amendment "is necessary to correct

manifest errors of law or fact upon which the judgment is based." 11 Wright &

Miller, *Federal Practice & Procedure* § 2810.1 (3d ed.).  The court may also

22

correct a mistake found in a judgment or order and relieve a party from a final

judgment "for any . . . reason that justifies relief."  Fed. R. Civ. P. 60(a), (b).

**ARGUMENT**

I.     **The District Court's decision granting the Motion to Dismiss was based on an erroneous legal interpretation of Va. Code § 46.2-395 and failed to accept as true the facts alleged in the Complaint concerning the process by which that statute is implemented.**

The District Court's decision granting the Motion to Dismiss relied heavily

upon its legal interpretation of the text of Va. Code § 46.2-395.  (JA583-91.)  That

legal interpretation centered around language in one particular sentence in the

statute, which states that in the event of a default, "the court shall forthwith

suspend the person's privilege to drive . . . ."  (JA583-84 (quoting and discussing

Va. Code § 46.2-395(B)) (emphasis removed).)  Ultimately, the District Court

mistakenly decided it lacked subject matter jurisdiction based on its view that

under the statute, "if the defendant does not make immediate payment, his driver's

license is suspended . . . immediately[,]" such that "[e]very conviction involving a

fine or costs . . . effectively includes the suspension of the person's license" that is

"ordered *by the court*."  (JA584.)  Based on these findings, the District Court

concluded that the Debtors' license suspensions were "a legal reality that preexists

any involvement whatsoever from the Commissioner."  (JA586.)

The District Court's statutory interpretation was erroneous.  And,

importantly, its statutory interpretation also stands in stark contrast to the manner

23

in which the statute is implemented by the Commissioner.  The District Court
should not have dismissed the Complaint because there are serious factual disputes
about what the Commissioner does under Va. Code § 46.2-395.  As the Debtors'
Complaint and supporting materials make clear, there are no self-executing license
suspension "orders" issued by the courts upon conviction.  (*See* Statement of the
Case § I, *supra*.)  Suspensions for unpaid court debts instead result from actions
undertaken by the Commissioner, which occur after a court debt remains unpaid
for thirty days (or the defendant fails to enter a payment plan), and after the court's
systems notify DMV of the default.  (*See id.*)  There is no "suspension order"
issued by the court; rather, it is DMV that executes the license suspension after
being informed of nonpayment.  (*See id.*)

## A. The district court's legal interpretation of Va. Code § 46.2-395 was erroneous.

As a matter of statutory interpretation, the District Court's interpretation of
Va. Code § 46.2-395 fails to make sense of the text of that statute, renders the
statute inconsistent with related statutes, and conflicts with the interpretation of
that statute rendered by the Virginia Court of Appeals.

### 1. Payment of court debt is due thirty days after sentencing, not immediately.

Based on its reading of Va. Code § 46.2-395(B), the District Court held that
"at the moment of conviction in a Virginia criminal case, full payment of any

24

assessed fines and costs is due 'immediate[ly].'"  (JA584.)  However, the word

"immediate" in Va. Code § 46.2-395(B) is not defined, and it must be read

consistently with other provisions, including Va. Code §§ 19.2-354(A) and 46.2-

395(C).  *See, e.g.*, *United States v. Stewart*, 311 U.S. 60, 64 (1940) ("It is clear that

all acts in pari materia are to be taken together, as if they were one law.") (internal

quotation omitted).  Both of those provisions reference thirty days from sentencing

as the operative time period within which a defendant must pay in full or establish

a payment plan in order to *avoid* suspension.  Va. Code § 19.2-354(A) specifically

permits payment within thirty days of sentencing or otherwise requires the court to

order a payment plan.  *Id.* (Whenever a "defendant is unable to make payment . . .

within 30 days of sentencing, the court shall order the defendant to pay . . . in

deferred payments or installments."); (*see also* Compl. ¶ 279).

> **2.    Suspension is triggered by the failure to pay court debt within thirty days of sentencing, not at the moment of conviction.**

If the defendant then fails to pay deferred or installment payments as

ordered, "his privilege to operate a motor vehicle *will be suspended* pursuant to

§ 46.2-395."  Va. Code § 19.2-354(D) (emphasis added). Thus, if the person is not

able to pay immediately and is put on a payment plan, suspension does not occur

as long as he or she abides by the plan.  It is a default on paying a fine or cost, not

a conviction, that triggers the license suspension.  (*See, e.g.*, Compl. ¶¶ 4, 39, 63-

65, 102, 138, 144, 151, 178, 205, 250, 284-285, 404.)  As the Commissioner's

counsel acknowledged at oral argument on the Motion to Dismiss:

> I'm talking about at the time of your criminal conviction
> and the court says, "You owe us $500.  Pay us $500.
> You have 30 days to pay under the statute." *There is no
> suspension there at all until the 30 days has lapsed and
> you haven't paid*, and that's when the suspension goes
> into effect.

(JA478 (emphasis added).)

The District Court's contrary interpretation of Va. Code § 46.2-395(B)

"would risk running headlong into the rule against superfluity." *Lockhart v.

United States*, 136 S. Ct. 958, 966 (2016).  Under the District Court's

interpretation, where suspension is immediate if court debt is not paid at

conviction, the phrase "fails to make deferred payment or installment payments" in

Va. Code § 46.2-395(B) would be meaningless surplusage.  Payment plans can

issue within up to thirty days after sentencing, but under the District Court's

reading of the statute, the suspension would already be in place and there would be

no need to suspend the license of a debtor who "fails to make deferred payment or

installment payments . . . ." *See* Va. Code § 46.2-395(B).  Moreover, Va. Code §

19.2-354(D) indicates that a person can *avoid* suspension by staying current on a

payment plan.  If the suspension occurred by court order at the time of conviction,

as the District Court would have it, a debtor would not be able to avoid suspension

even if he or she remained current on a payment plan.

26

### 3.    Under the statute as interpreted by Virginia courts, license suspensions do not occur until the Commissioner implements the suspension thirty days after nonpayment.

The District Court's holding that the license suspension is ordered by the court at the time of conviction is also contrary to the applicable decisions of the Virginia courts. *Plummer*, 408 S.E.2d 765, makes clear that DMV, not the sentencing court, suspends driver's licenses, and that the suspension is not self-executing, but occurs after *DMV* executes the suspension.

*Plummer* involved a defendant's challenge to his conviction for driving with a suspended license. Previously, the defendant had been convicted for speeding and signed an acknowledgment form stating his license would be suspended if he did not pay his court debt within ten days. 408 S.E.2d at 765. He failed to pay and was later convicted for driving with a suspended license. The issue in *Plummer* was whether the evidence was sufficient to convict a person of driving with a suspended license in violation of Va. Code § 46.2-301 if the person's only knowledge of a potential suspension was the acknowledgment form indicating his license would be suspended if he failed to pay fines and costs. 408 S.E.2d at 765-66. Thus, the suspension at issue was for nonpayment of a court debt.

The Court of Appeals reversed the conviction, holding that acknowledgment forms regarding driver's license suspensions for unpaid court debts are not "self-executing suspension[s]." 408 S.E.2d at 766. The court found that even "[t]he

27

DMV agent agreed that appellant's license remained valid until *the DMV order* was actually executed" and held that acknowledgment forms are "insufficiently definite as to a time of suspension to support the necessary proof of notice." *Id.* (emphasis added). Thus, in addition to demonstrating that the District Court's legal interpretation of Va. Code § 46.2-395 is erroneous, the *Plummer* decision directly contradicts the District Court's conclusion that the acknowledgment forms constitute or evidence a suspension "order" by the Court. (*Compare* JA586-87, *with* Argument Section I.B, *infra*.)

*Carew v. Commonwealth,* 750 S.E.2d 226 (Va. Ct. App. 2013), reaffirms *Plummer* and reinforces the facts that DMV is the entity that suspends a debtor's driver's license and that the suspension is not self-executing upon conviction. Like *Plummer*, *Carew* involved a defendant's challenge to her conviction for driving without a valid license. Citing *Plummer*, the Court of Appeals in *Carew* reversed the conviction, holding that "[a] license is not suspended until notice of that status is received by the holder." *Carew*, 750 S.E.2d at 228 (emphasis added). Thus, the Court of Appeals again held there is no "suspension" of a driver's license until DMV executes the suspension and notifies the defendant of it.

*Plummer* and *Carew* demonstrate the errors in the District Court's findings concerning how and when driver's license suspensions arise based on its erroneous legal interpretation of Va. Code § 46.2-395. Moreover, the District Court's

findings concerning how Virginia's license-for-payment scheme works in practice

directly conflicted with the allegations in the Debtors' Complaint.

### B. The Complaint alleges that suspensions are administratively implemented by the Commissioner, not ordered by the court.

Even if the District Court's legal interpretation of Va. Code § 46.2-395 were

correct, that interpretation conflicts with the facts alleged in the Complaint

concerning the manner in which the statute is implemented.  As alleged in the

Complaint, the Commissioner implements suspensions of driver's licenses after

receiving a transmission from the court's computers reflecting a record of

nonpayment.  (*See* Compl. ¶¶ 284-289, 39, 66, 67, 103, 129-30, 152-53, 174-75,

179-80, 227-28, 251, 370, 412.)  The court computer systems only "transmit a

person's record of nonpayment to the DMV electronically."  (Compl. ¶¶ 286, 404,

412.)  There is no independent record of a license suspension except that which is

maintained by DMV.

This is further demonstrated by a review of the Acknowledgement Forms

attached as Exhibits C and D to the Complaint, which contain the administrative

information provided by the clerk's office to the defendant after sentencing and are

not court orders.  (JA148-53); *see Plummer*, 408 S.E.2d at 766.  Both DC-210

(Exhibit C) and CC-1379 (Exhibit D) are broken into two parts.  (JA148-53.)  Part

I is an "ACKNOWLEDGMENT OF SUSPENSION OR REVOCATION OF

DRIVER'S LICENSE."  (*Id*.)  On both forms, Part I contains no reference to an

29

order.  (*See id.*)  Part I of CC-1379 contains a signature block to be signed by a judge, clerk, or notary public, but this signature block is for notarizing the defendant's signature, rather than for issuing an order.  (*See* JA152.)  Part I of DC-210 has only a signature block for the defendant to sign; there is no block for the judge, clerk, or notary public to sign.  (*See* JA149.)  Although DC-210 states that the license "has been suspended . . . . effective thirty days from the date of sentencing . . . pursuant to Va. Code § 46.2-395[,]" CC-1379 states that the license "*will be suspended* effective thirty days from the date of sentencing" when referencing Va. Code § 46.2-395.  (*Compare* JA149, *with* JA152 (emphasis added).)

Part II of the forms pertains to deferred or installment payments, or (in the case of DC-210) community service.  (JA149, 152.)  It does not address license suspension.  (*See id.*)  Whereas Part I is an "acknowledgment" regarding license suspension, Part II refers to an "order" regarding *payment arrangements*.  (*Id.*)  There is a signature block to be signed by the clerk or the judge, "order[ing]" the defendant to make installment or deferred payments, or perform community service.  (*Id.*)  This distinction between Part I and Part II of the form is meaningful; it indicates that the portion addressing license suspension is not an order.

Thus, the District Court's legal interpretation of Va. Code § 46.2-395 was erroneous, and it contradicted and failed to accept as true the facts alleged in the

Complaint, which were further supported by the documentary evidence submitted by the Debtors in support of their Post-judgment Motions. (*See* Statement of the Case §§ I.A & I.B, *supra*.) These errors infected all of the District Court's holdings with respect to jurisdiction and require reversal.

## II. The *Rooker-Feldman* doctrine does not deprive the District Court of jurisdiction.

### A. Because the Debtors are not asking the District Court to review a state court judgment, the *Rooker-Feldman* doctrine does not apply.

Based on its erroneous findings concerning who executes the suspension based on its interpretation of Va. Code § 46.2-395(B) and the court forms, the District Court concluded that the Debtors' claims are barred by the *Rooker-Feldman* doctrine because the Debtors are asking the court to review a state court judgment. (JA593-98.) This conclusion is contrary to the allegations in the Complaint.

*Rooker-Feldman* holds that "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam); *Thana v. Bd. of License Comm'rs*, 827 F.3d 314, 319 (4th Cir. 2016). The doctrine is narrow and focused, confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*

31

*Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Essentially, the doctrine is invoked in the limited circumstance where a court is "called upon . . . to overturn an injurious state-court judgment." *Id.* at 291-92. However, "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . then there is jurisdiction." *Id.* at 293 (alterations and quotation marks omitted).

Recently, this Court provided a thorough review of the *Rooker-Feldman* doctrine in *Thana*, 827 F.3d 314. In emphasizing the "narrow role" of the doctrine, the Court noted that since *Rooker* and *Feldman* the Supreme Court "has never applied the doctrine to deprive a district court of subject matter jurisdiction" and since *Exxon* this Court "ha[s] never, in a published opinion, held that a district court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine." *Id.* at 320 (citing *Skinner v. Switzer*, 562 U.S. 521, 531 (2011); *Lance*, 546 U.S. at 464; *Exxon*, 544 U.S. at 287).

The Court explained that "if a plaintiff in federal court does not seek review of the state court judgment itself but instead '*presents an independent claim*, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court.'" *Id.* (quoting *Skinner*, 562 U.S. at 532). In addition, "[c]onsistent with this narrow articulation of the *Rooker-Feldman* doctrine, the Supreme Court has also recognized that state

32

administrative and executive actions are not covered by the doctrine." *Id.* at 320-21 (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002)).

In *Thana*, a restaurant brought a federal action challenging a state agency's revocation of its alcoholic beverage license. *Id.* at 316. The restaurant had challenged the liquor board's actions through appeals to state courts, raising the same constitutional arguments. *Id.* However, this Court held that the federal challenge was not barred by the *Rooker-Feldman* doctrine because the restaurant's federal "action was, and is, challenging the *action of a state administrative agency*, rather than alleging injury caused by a state court judgment." *Id.* at 321 (emphasis altered). Where a plaintiff "challenges state administrative actions, the *Rooker-Feldman* doctrine does not apply as a categorical matter." *Id.* (citing *Exxon*, 544 U.S. at 287; *Verizon*, 535 U.S. at 614 n.3); *see also Jordahl v. Democratic Party*, 122 F.3d 192, 199 (4th Cir. 1997) ("The *Rooker-Feldman* doctrine only applies to 'adjudications' not 'legislative acts.'").

Here, the Debtors' claims fall outside the narrow focus of the *Rooker-Feldman* doctrine. The Debtors are not challenging either the underlying orders of conviction or the assessment of costs. They simply challenge the subsequent suspension of their licenses with no notice, no hearing, and no determination of their ability to pay. The steps taken (the suspension of the driver's license) and not taken (the failure to provide notice, a hearing, or any pre-deprivation assessment of

33

the ability to pay) *by DMV* (the administrative agency) pursuant to an unconstitutional law are independent executive actions that do not occur until after default. (*See* Statement of the Case § I.A, *supra*.) The Commissioner receives an electronic transmission noting that a debtor has defaulted and then suspends the debtor's license without providing any post-default notice or hearing regarding their ability to pay the fines and costs. (*See id*.) It is this post-judgment act, accompanied by the Commissioner's failure to provide the necessary constitutional safeguards, that forms the basis of the claims.

In similar situations, other courts have recognized that *Rooker-Feldman* is inapplicable. *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 606 (6th Cir. 2007) (holding *Rooker-Feldman* did not apply to a class action by indigent defendants challenging the public defender's policy of failing to seek indigency hearings for defendants facing jail for unpaid fines); *see also Fant v. City of Ferguson*, 107 F. Supp. 3d 1016, 1030 (E.D. Mo. 2015) ("Because Plaintiffs do not complain of injuries caused by the state court judgment, but rather by the post-judgment procedures employed to incarcerate persons who are unable to pay fines, *Rooker-Feldman* is also inapplicable."); *Ray v. Judicial Corr. Servs.*, No. 2:12-02819, 2013 WL 5428360, at *9 (N.D. Ala. Sept. 26, 2013) (holding that *Rooker-Feldman* was inapplicable to § 1983 claims against a municipality for jailing persons unable to pay traffic fines because "Plaintiffs' suit does not

34

challenge the merits of the municipal court's decisions," or "call into question any of the bases on which those judgments were reached," but only "challenge[s] the post-judgment probationary program"). Like these cases, the Debtors' challenge is to post-judgment treatment of defendants unable to pay court debt, not to the underlying convictions or even the imposition of costs.

*Rooker-Feldman* "has no application" to a case—such as Debtors'—where a federal court is called upon to "review . . . executive action, including determinations made by a state administrative agency." *Verizon*, 535 U.S. at 644 n.3. Likewise, this Court recently instructed that when a plaintiff is "challenging the action of a state administrative agency," *Rooker-Feldman* is no obstacle to jurisdiction. *Thana*, 827 F.3d at 321. For these reasons, taking the facts as alleged in the Complaint as true, the *Rooker-Feldman* doctrine does not apply.

**B.    Even if the suspensions are viewed as final state court judgments, *Rooker-Feldman* does not apply because this is an independent constitutional challenge to a state statute.**

Even assuming that suspensions pursuant to Va. Code § 46.2-395 are final state court judgments rendered at the time of conviction, the *Rooker-Feldman* doctrine does not apply. The Supreme Court has consistently drawn distinctions between challenges to the merits of a state court judgment, which are barred by *Rooker-Feldman*, and challenges to the constitutionality of the process by which

35

that decision was reached, which are not.  *See, e.g.*, *Skinner v. Switzer*, 562 U.S. 521, 532 (2011).

Indeed, the District Court erred in relying on *Jordahl* to support application of the *Rooker-Feldman* doctrine here.  (JA594.)  In *Jordahl*, the plaintiffs sought to invalidate state court injunctions that they contended violated the First Amendment.  122 F.3d at 194.  This Court concluded that the state court judgments involved judicial inquiry into whether a state statute had been violated and that the relief sought by the plaintiffs would require the "federal district court to declare the Virginia state courts' decision in error."  *Id.* at 202.  The Debtors are not asking the District Court to declare that Virginia judges made any errors.  They are asking the District Court to declare the statutory scheme unconstitutional, both as written and as implemented by DMV.  Importantly, in *Jordahl* this Court explicitly recognized that cases like this one are distinguishable, noting that "[a] distinction must be made between actions seeking review of the state court decisions themselves and those cases challenging the constitutionality of the process by which the state court decisions resulted."  *Id*.

In analyzing *Rooker-Feldman* issues, courts are called upon to look not at "the character of the body but upon the character of the proceedings."  *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 477 (1983) (quoting *Prentis v. Atlantic Coast Line,* 211 U.S. 210, 226 (1908)).  *Rooker-Feldman* applies only in cases involving

36

a "'judicial inquiry' in which the court [is] called upon to investigate, declare, and enforce 'liabilities as they [stood] on present or past facts and under laws supposed already to exist.'" *Id.* at 479 (quoting *Prentis*, 211 U.S. at 226). In this case, suspensions under Va. Code § 46.2-395 involve no judicial inquiry. Indeed, it is the fundamental *lack* of any judicial inquiry into the ability to pay that constitutes the basis of the Debtors' Complaint. At most, even as described by the District Court, the current role of state courts in suspensions under Va. Code § 46.2-395 is ministerial.

Here, the Debtors challenge the process—or lack thereof—by which their licenses were suspended. As this Court opined as recently as March 17, 2017, "a federal plaintiff 'encounters no *Rooker-Feldman* shoal' when presenting an independent claim, even if 'the same or a related question was earlier aired between the parties in state court.'" *LaMar v. Ebert*, 681 F. App'x 279, No. 15-7668, 2017 WL 1040450, at *6 (4th Cir. Mar. 17, 2017) (quoting *Skinner*, 562 U.S. at 532). Challenges to the constitutionality of a state statute like this lawsuit do not implicate the *Rooker-Feldman* doctrine, even if the federal ruling would cast doubt on the state court judgment. *Id*. Therefore, the *Rooker-Feldman* doctrine does not, and cannot, apply here under any view of the facts.

## III.    The Debtors have Article III standing.

The District Court also found that the Debtors lacked standing.  (JA598-604.)  "Constitutional standing comprises three elements: (1) the plaintiff is required to have sustained an injury in fact; which (2) must be causally connected to the complained-of conduct undertaken by the defendant; and (3) will be likely to be redressed if the plaintiff prevails."  *Libertarian Party v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  Based on its factual finding that "the state courts suspend licenses" under Va. Code § 46.2-395(B), the District Court held that the Debtors' injury was not caused by the Commissioner.  (JA599-600.)  Similarly, the District Court held that a favorable decision would not redress the Debtors' injury because of the Commissioner's purportedly "marginal role" in "overseeing the entry or 'processing' of the court suspension orders into statewide databases."  (JA600.)  To the contrary, the Debtors have standing because they have been grievously injured by the Commissioner's actions in implementing an unconstitutional statute, and those injuries can be redressed by the relief they seek.

### A.    Causation/Traceability

The concept of causation, or traceability, does not rest on "stringent" principles of legal or proximate cause that ordinarily operate to assign tort liability.  *Libertarian Party*, 718 F.3d at 315; *see also Friends of the Earth*, *Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000).  Instead, "[t]he 'fairly

traceable' requirement ensures that there is a genuine nexus between the plaintiff's injury and a defendant's alleged illegal conduct." *Friends of the Earth*, 204 F.3d at 161 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

The Complaint clearly establishes a "genuine nexus" between the Debtors' inability to drive legally and the Commissioner's execution of license suspensions under Va. Code § 46.2-395. The Complaint alleges:

- Each year since 2010, DMV issued more than 360,000 orders of suspension for failure to pay court debt (Compl. ¶ 32);

- DMV computer systems default to suspension whenever payment is due and not entered (Compl. ¶ 287);

- DMV employees follow data entry protocols to issue the order of suspension (Compl. ¶ 289);

- The Debtors' licenses were suspended by the Commissioner immediately upon default, without inquiry into financial circumstances or the reasons underlying failure to pay (Compl. ¶ 39);

- The Commissioner will not reinstate the Debtors' licenses until they satisfy their court debt entirely or obtain payment plans from each court to which they are indebted (Compl. ¶ 40);

- Should the Debtors ever become eligible to reinstate their licenses, they would first have to pay the Commissioner a reinstatement fee of at least $145 (Compl. ¶ 43); and

- The Commissioner does not review a person's financial condition or inquire as to reasons for default at any point related to suspending a license for failure to pay (Compl. ¶ 294).

The Debtors' injuries are directly traceable to the Commissioner's conduct regardless of any upstream activity by court personnel. Even if the District Court's finding that courts, and not the Commissioner, issue suspension orders was correct, it is the Commissioner who implements them. Indeed, the suspensions cannot be accomplished without action by DMV. *See Plummer*, 408 S.E.2d at 765-66. Therefore, the Commissioner's actions have a "genuine nexus" to the Debtors' injuries. The Debtors' licenses would not be suspended but for the Commissioner's actions. *See id*. at 766.

Moreover, recent authority from this Court indicates that the proper test for traceability is concurrent causation, or whether the Commissioner's actions are "at least in part responsible" for the Debtors' injuries. *See Libertarian Party*, 718 F.3d at 316. In challenging a statute's constitutionality, the fact that the defendant "is but one of several persons or entities in charge of implementing [it] is not controlling," so long as there is a causal connection. *LaMar*, 2017 WL 1040450, at

*5 (concluding that a constitutional challenge to Virginia's DNA testing statute may be brought against a Commonwealth's Attorney for his role in responding, pursuant to state court order, to a petition for DNA testing).

The Commissioner is far from a disinterested bystander with no involvement in the Debtors' injuries. He is a critical actor in the suspension process, with a carefully delineated role in effecting the unlawful suspensions. The Commissioner does so pursuant to Va. Code § 46.2-395, the challenged law from which the Debtors seek declaratory and injunctive relief. This close relation to the Debtors' injuries is more than sufficient to meet their "modest" burden in establishing causation at the motion to dismiss stage for purposes of Article III standing. *See Bennett v. Spear*, 520 U.S. 154, 171 (1997).

### B.    Redressability

An injury is redressable if it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Doe v. Va. Dept. of State Police,* 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). However, a party need not demonstrate that relief from the injury is guaranteed, *see id.*, or that he will be made completely whole. *See Minn. Citizens Concerned for Life v. FEC*, 113 F.3d 129, 131 (8th Cir. 1997) (a party satisfies redressability "when he shows that a favorable decision will relieve a discrete injury to himself. He need not

41

show that a favorable decision will relieve his *every* injury" (quotations and citation omitted)).

In *Doe*, the plaintiff sued the state police superintendent for reclassifying her as a sexually violent offender under a new statute. The plaintiff's injuries were caused by two actors: the court in convicting her of a "carnal knowledge of a minor" and the superintendent in publicly reclassifying her as a "sexually violent offender" and failing to provide a procedure to challenge reclassification. This Court found that Doe could demonstrate both traceability and redressability in her constitutional challenge. 713 F.3d at 757 (dismissing the case on unrelated grounds). The Court understood that the reclassification statute itself caused the plaintiff's injuries and held that invalidation of the statute would address her injury, presumably by either removing the classification or providing adequate procedures to challenge classification. *Id.* at 757-58.

In this case, the Debtors have requested several forms of relief, including a declaratory judgment that Va. Code § 46.2-395 is unconstitutional both as written and as implemented by the Commissioner. (JA62-63.) There is no "independent rule, policy, or decision that would prevent relief if the court were to render a favorable decision," 713 F.3d at 756, because the Debtors' case is, at its core, a challenge to the validity of a Virginia statute. (*See* JA582.) The Debtors' injuries are "directly traceable" to the statute, and a favorable result would lead to

42

invalidation of the statute and the injuries that flow from it. *See Doe*, 713 F.3d at 757-58.

Moreover, the Debtors can demonstrate that an injunction ordering DMV to remove the suspensions under Va. Code § 46.2-395 would solve the problem.[5] Pursuant to legislation enacted in 2015, the Commissioner is working on a system where a debtor can walk into a DMV customer service center and pay all court debt, and DMV will reinstate her license, without any court involvement. (*See* JA682.) If the Commissioner's customer service representatives can accept payment from court debtors, remove their suspensions under Va. Code § 46.2-395, and reinstate their licenses upon payment of the fee to DMV (all without any action by the convicting courts), then certainly the Commissioner could comply with an order from the District Court to remove unconstitutional license suspensions.

Even if the District Court were correct that "[l]egally, the licenses are still suspended" if the Commissioner is ordered to disregard any notices of suspension or nonpayment (JA600-01), the Debtors have still established redressability. The

_____

[5] Even if the Court is skeptical about standing, the Debtors should be permitted to develop those facts beyond the pleading stage. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (as to standing, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for . . . we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'") (quoting *Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

Debtors need not show that the requested relief would provide full redress of *all* their injuries. They need only show that the court's decision would "significantly affect" their injuries. *See Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 101 (4th Cir. 2011). As the District Court itself notes, an order removing the Debtors' unconstitutional suspensions from the DMV database would "decrease the likelihood Plaintiffs will be charged with driving on suspended licenses." (JA601.) It would also alleviate other harms suffered by the Debtors at the Commissioner's hands, including avoiding payment of hefty reinstatement fees. *See* Va. Code § 46.2-411. The Debtors, therefore, have demonstrated that the relief they seek will alleviate their injuries.

In finding a lack of redressability, the District Court focused on the Debtors' requested injunctive relief for reinstatement. (JA601-04 (discussing Prayer for Relief (e)).) In doing so, the District Court overlooked the fact that the Debtors also have standing for their requested declaratory relief (*see* Compl. Prayer for Relief (c)) and injunctive relief against future suspensions pursuant to Va. Code § 46.2-395 (*see* Compl. Prayer for Relief (d)). (JA62-63.) As the District Court recognized (*see, e.g.*, JA582), the requested declaratory relief essentially asks that the District Court find § 46.2-395 unconstitutional. If the Debtors are successful in proving that the statute is unconstitutional, the suspensions under the statute would be invalid. *See Doe*, 713 F.3d at 757-58.

44

The District Court also mistakenly suggested that an order directing the Commissioner to disregard notices of nonpayment would result in an incoherent duality in which suspensions would not appear in DMV databases but the "legal reality" of suspensions would remain unchanged. (JA600-01.) In actuality, (1) license suspensions do not exist as a "legal reality" until the Commissioner acts pursuant to Va. Code § 46.2-395's directives; and (2) the trial court does not maintain records of suspensions independent of DMV's records.

First, the Debtors' licenses were suspended irrespective of orders by any court, as evidenced by the fact that DMV suspended the Debtors' licenses regardless of whether the judge or clerk ever elected (or did not elect) a suspension under Va. Code § 46.2-395. (*See* Statement of the Case §§ I.A & I.B, *supra*.) Moreover, the Acknowledgement Forms are not self-executing orders, and no suspension exists until DMV issues it and sends notice to the driver. *Plummer,* 408 S.E.2d at 766.

Second, and significantly, the trial court maintains no independent record of suspensions for failure to pay. (*See* JA648, Dugger Decl. ¶ 8.) If Va. Code § 46.2-395 were stricken as unconstitutional, everything in the court system could continue as usual. Clerks could continue to enter payment information into the system, which would continue to flag accounts in default. The only thing that would not happen is that DMV would not issue or implement a suspension upon

45

receiving notice of nonpayment.  Thus, suspensions under Va. Code § 46.2-395

depend on the Commissioner's actions, the Debtors have established redressability,

and the District Court's dismissal for lack of standing should be reversed.

## IV.    The Commissioner is not entitled to Eleventh Amendment immunity.

The District Court also held that the Commissioner is entitled to Eleventh

Amendment immunity.  (JA604-08.)  Once again, the District Court's holding

focused on its conclusion that the Commissioner "does not suspend the licenses"

and, therefore, is not responsible for the challenged state action.  (JA605.)

However, under either the facts as alleged in the Complaint, or as reimagined by

the District Court, the Commissioner is not entitled to immunity because the *Ex

Parte Young* exception applies.  As the leader of the agency responsible for the

"issuance, suspension, and revocation of driver's licenses," the Commissioner

undoubtedly possesses sufficient connections to the contested statute to prevent

immunity.  *See* Va. Code § 46.2-200.

In *Ex Parte Young*, the Supreme Court held that a state official is properly

named as a defendant when the official "by virtue of his office has *some

connection* with the enforcement of the act."  209 U.S. at 157 (emphasis added);

*see also S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332 (4th Cir. 2008). The

defendant official must have a "special relation" to the challenged statute, as

opposed to "general authority to enforce the laws of the state."  549 F.3d at 333

(quotations and citation omitted).  The official need not be the primary authority to enforce the law; it is sufficient that he has some authority to act in furtherance of the statute.  *See 281 Care Comm. v. Arneson*, 638 F.3d 621, 633 (8th Cir. 2011).

For example, in *Summers v. Adams*, religious leaders sued South Carolina's Director of the Department of Corrections ("DOC"), challenging the state's "I Believe" Act, which authorized DMV to issue religiously-themed license plates. 669 F. Supp. 2d 637 (D.S.C. 2009).  The DOC Director argued that the agency's duty to manufacture the plates was insufficient for application of the *Ex Parte Young* doctrine.  *Id.* at 653-54.  The federal court disagreed, holding that the Director's involvement with the execution of the challenged law—as the leader of the only agency that actually manufactured the contested license plates—created a sufficient relationship with the "I Believe" Act to support naming him as a defendant.[6]  *Id.* at 655; *see Finberg v. Sullivan*, 634 F.2d 50, 53-54 (3d Cir. 1980) (finding clerk and sheriff's respective duties of issuing and serving writ of execution on garnishee were sufficient connections in case seeking declaratory judgment that post-judgment garnishment procedures violated due process rights) (executing writ of execution was "the immediate cause of the attachment and freezing of [the plaintiff]'s bank accounts" and if "the rules that [the sheriff and

---

[6] The court reached this conclusion even though the challenged statute did not mention the DOC.  Here, Va. Code § 46.2-395 references the Commissioner or DMV by name *nine* times.

47

clerk] were executing were unconstitutional, their actions caused an injury to [the plaintiff]'s legal rights"); *see also Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (holding state officials were properly named because they "clearly have assisted or currently assist in giving effect to the [challenged] law").

Here, the Commissioner's connections to the enforcement of Va. Code § 46.2-395 are just as strong as the defendants' connections to the statutes in *Summers* and similar cases. The District Court's legal interpretation of Va. Code § 46.2-395 is erroneous. (*See* Argument § I.A, *supra*.) But even if the District Court were correct in finding that state courts or clerks issue "suspension orders," it is DMV that by the Commissioner's own admission "implements [such] order[s]." (Def.'s Mot. to Dismiss Mem. at 17, JA177.) Implementation of the orders alone is sufficient to satisfy the *Ex Parte Young* standard. *See Summers*, 669 F. Supp. 2d at 655; *Sabo v. Casey*, 757 F. Supp. 587, 591 (E.D. Pa. 1991) ("The inquiry is not the nature of an official's duties but . . . the effect of the official's performance of his duties on the plaintiff's rights.") (quotations and citation omitted). When the Commissioner executes suspensions, he clearly "assist[s] in giving effect to" and has "a special relation" with the challenged statute. *Wagnon*, 476 F.3d at 828; *S.C. Wildlife Fed'n*, 549 F.3d at 333. Enjoining the Commissioner from taking such

action would provide redress for the Debtors' claims. Consequently, the Commissioner cannot avail himself of Eleventh Amendment immunity.

This Court's precedents cited in the District Court's Opinion are distinguishable. In *McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010), for instance, this Court declined to apply the exception in three suits against Virginia's Attorney General to enforce the Virginia Freedom of Information Act ("VFOIA"). The Court noted that there is no special relationship between the defendant and the challenged statute "when an official merely possesses '[g]eneral authority to enforce the laws of the state[.]'" *Id.* at 399-400 (citing *S.C. Wildlife Fed'n*, 549 F.3d at 331). The Virginia Attorney General had no "special relation" to the VFOIA—he was merely the state official charged with general authority to enforce law. Thus, the *Ex Parte Young* exception did not apply.

This case is different. The Commissioner certainly has "some connection with the enforcement of the act." *Ex Parte Young*, 209 U.S. at 157 ("The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact . . . ."). The official need not be the primary authority to enforce the law; it is sufficient that he has some authority to act in its furtherance. *See Arneson*, 638 F.3d at 633. Suspensions under Va. Code § 46.2-395 intimately involve DMV, which implements and carries out those suspensions and collects reinstatement fees.

49

Similarly, in *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536 (4th Cir. 2014), this Court granted immunity to officials of a public employee retirement account against a challenge to mandatory paycheck withdrawals.  As the Court noted in rejecting an *Ex Parte Young* theory, the officials played "no role" in the mandatory withdrawals but merely invested deposited money.  *Id.* at 551.  The Commissioner's role in license suspension is very different from the pension fund managers, who had "no connection" to the challenged statute.  *Id*.  All they did was "wait passively" for funds to arrive and then invest them.  *Id*.  While an injunction would stop the pension fund managers from investing the funds, it could not stop the deduction and transmission of funds, which was the action that harmed the *Hutto* plaintiffs. *Id*.  In this case, whether the Commissioner is issuing the suspensions himself or simply implementing and publishing suspensions issued by the state courts, it is DMV's actions that cause harm to the Debtors.  License suspensions are meaningless without DMV's actions because police officers would be unaware of the suspensions without DMV's records.

That direct connection between the Commissioner and the unconstitutional license-for-payment scheme challenged by the Debtors is more than sufficient under *Ex Parte Young*.  *See, e.g.*, *Bostic v. Schaefer*, 760 F.3d 352, 371 & n.3 (4th Cir. 2014) (holding that court clerk was not entitled to immunity in a lawsuit challenging Virginia's ban on same-sex marriage, finding that the clerk bore "the

requisite connection to the enforcement of the Virginia Marriage Laws due to his role in granting and denying applications for marriage licenses"); *El-Amin v. McDonnell*, No. 3:12-CV-00538-JAG, 2013 WL 1193357, at *8 (E.D. Va. Mar. 22, 2013) (declining to dismiss claim, finding that Governor and Secretary of the Commonwealth played a "unique role" related to felon disenfranchisement).

The Commissioner and DMV oversee the licensure of drivers and are referenced nine times in Va. Code § 46.2-395. Thus, the Commissioner is an appropriate Defendant in this action challenging the constitutionality of Va. Code § 46.2-395, and Eleventh Amendment immunity should not apply.

## V.     The District Court erred by granting the Commissioner's Motion to Strike.

Even though the Commissioner mounted a facial challenge to jurisdiction in his Motion to Dismiss, the District Court based its jurisdictional rulings in part on findings pertaining to how the license-for-payment scheme works in practice that directly contradict the allegations in the Complaint and are divorced from the reality of the Debtors' experiences. (*Compare* JA583-87, *with* Statement of the Case § I, *supra*.) The District Court also ruled on standing *sua sponte*, without the benefit of briefing. (JA721-22; *see also* JA598-604.) In light of these new factual disputes injected into the proceedings after the close of briefing on the Motion to Dismiss, the Debtors attached Exhibits to their Post-judgment Motions demonstrating that the facts alleged in the Complaint were accurate, the District

51

Court's findings concerning the process by which license suspensions are implemented were erroneous, and the District Court had jurisdiction. (*See* JA614-23, 640-83, 732; *see also* Statement of the Case § I.B, *supra*.)

By disputing and then disregarding the allegations in the Complaint that demonstrated jurisdiction (JA577 & n.1), the District Court itself created a factual challenge to jurisdiction. Nonetheless, the Commissioner moved to strike under Rule 12(f) on the grounds that consideration of the Exhibits was not appropriate on a motion to dismiss.[7] (JA684-94.) The District Court granted the motion, acknowledging that it could consult evidence outside the pleadings when assessing jurisdiction, but only if the challenge to jurisdiction was a factual one. (JA746-47.)

The District Court erred both by failing to recognize that its decision discounting the jurisdictional facts alleged in the Complaint challenged the Debtors' factual basis for subject matter jurisdiction and by subsequently striking and failing to consider the Exhibits when deciding the Post-judgment Motions. Where, as here, the factual basis for subject matter jurisdiction is challenged, the

---

[7] Rule 12(f), which applies to "pleadings," was not the proper procedural vehicle for the Commissioner's request to strike, and the Motion to Strike should have been denied on that basis as well. *See, e.g.*, *Fox v. Mich.*, 173 F. App'x 372, 375 (6th Cir. 2006) (holding court did not abuse its discretion in denying motion to strike documents attached to motion to dismiss on the ground that Rule 12(f) applies only to pleadings); *Coleman v. Silver*, 939 F. Supp. 2d 27, 28 (D.D.C. 2013); *Thomas v. Bet Sound-Stage Rest.*, 61 F. Supp. 2d 448, 457 (D. Md. 1999) (citing cases).

District Court "may also consider evidence outside the pleadings to determine whether jurisdiction exists." *Falwell*, 198 F. Supp. 2d at 772.

The District Court also erroneously objected that none of the Exhibits "were otherwise properly before the Court when it ruled on Defendant's motion to dismiss." (JA746.) That finding overlooks the evolving nature of the jurisdictional dispute. No party briefed the jurisdictional positions concerning Va. Code § 46.2-395 adopted by the District Court in its Opinion. Indeed, the Commissioner took the contrary position that "[t]here is no suspension there at all until the 30 days has lapsed and you haven't paid . . . ." (JA478.) Moreover, the District Court addressed standing *sua sponte*, and it was the District Court's rejection in its Opinion of the "factual merits underlying the Plaintiff's allegation of federal jurisdiction" that first led to the need to submit evidence to prove the truth of the facts alleged in the Complaint. *Trantham v. Henry Cty. Sheriff's Office*, No. 4:10-cv-58, 2011 WL 863498, at *3 (W.D. Va. Mar. 10, 2011). Under these circumstances, the Debtors appropriately attached evidence to their Post-judgment Motions. *See EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997) (affirming consideration of affidavit in granting of Rule 59 motion even though it was not new evidence).

The Debtors presented the Exhibits to correct the District Court's mistaken understanding of the facts concerning the process by which driver's licenses are

suspended due to unpaid court debt.  This was wholly appropriate in light of the Opinion.  The District Court's decision striking the Exhibits was an abuse of discretion and should be reversed.

## VI.    The District Court erred by denying the Debtors' Post-judgment Motions.

After striking the Exhibits, the District Court denied the Debtors' Post-judgment Motions.  (JA747-49.)  So doing, the District Court abused its discretion.  The Exhibits, which should not have been stricken, show the reality of the process for suspending driver's licenses due to unpaid court debts—namely, that there is no "self-executing" license suspension issued by the court and that it is the Commissioner, and not the court, who executes the license suspension after a court debt becomes past due.  (*See* Statement of the Case § I.B, *supra*.)  The Exhibits lay bare the manifest errors of fact and law in the Opinion, which required that the District Court reconsider.  (*See id.*; *see also* JA612-39; JA707-24.)

Even without considering the Exhibits, it is clear from the Complaint that the District Court should have granted the Post-judgment Motions and reversed its jurisdictional holdings.  (*See, e.g.*, Argument § I, *supra*.)  In cases where the legal and evidentiary landscape is unchanged, a court nonetheless can grant post-judgment relief "to correct a clear error of law or prevent manifest injustice." *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (citation omitted). Nowhere is the obligation to reach the correct judgment "greater and more

54

unflagging than in the context of subject matter jurisdiction issues, which call into question the very legitimacy of a court's adjudicatory authority." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). So "paramount" is the importance of reaching a correct judgment on jurisdiction that rulings early in the proceedings are not accorded the same weight as decisions rendered after full discovery or trial. *Id.* at 516.

The facts regarding the process (or lack thereof) by which licenses are suspended due to unpaid court debts as alleged in the Complaint are integral to both the determination of subject matter jurisdiction and the merits of the Debtors' constitutional claims. Where, as here "the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Kerns*, 585 F.3d at 193 (reversing dismissal). When "a factual attack on subject matter jurisdiction involves the merits of a dispute, '[t]he proper course of action . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case'" after discovery. *United States v. North Carolina*, 180 F.3d 574, 580-81 (4th Cir. 1999) (citation omitted).

Moreover, the lack of adequate notice that an issue, like standing, would be decided supports relief under Rule 59(e) to avoid manifest injustice and allow the

issue to be properly heard and considered. *D-D The Aquarium Sol. Ltd. v.*

*Giesemann Lichttechnik und Aquaristik GmbH,* No. 1:14-CV-846 LMB/IDD, 2015

WL 1516387, at *4 (E.D. Va. Apr. 1, 2015); *see also Cty. of Grayson v. RA-Tech*

*Servs., Inc.,* Civ. A. No. 7:13-CV-00384, 2014 WL 971697, at *1 (W.D. Va. Mar.

12, 2014) (relief appropriate where the court "made a decision outside the

adversarial issues presented . . . by the parties") (quotations and citation omitted).

For these reasons, with or without consideration of the Exhibits, and in light of the

manifest errors of fact and law in the jurisdictional findings in the Opinion, it was

an abuse of discretion for the District Court to deny the Debtors' Post-judgment

Motions.

## CONCLUSION

This Court should reverse and remand this case for further proceedings.

## ORAL ARGUMENT STATEMENT

The issues presented for appeal warrant argument. The Commissioner and

the District Court have improperly injected complex factual disputes contrary to

the allegations in the Complaint into the record on the Commissioner's Motion to

Dismiss. Moreover, the legal analysis involves multiple purported jurisdictional

flaws, which threaten to swamp the Debtors' otherwise meritorious claims in a

case where the District Court has acknowledged that the "unflinching command"

of the statute at issue "may very well violate Plaintiffs' constitutional rights to due process and equal protection."  (JA608.)

Dated:  August 9, 2017

Respectfully submitted,

/s/ Jonathan T. Blank

Jonathan T. Blank
Tennille J. Checkovich
McGuireWoods LLP
Court Square Building
310 Fourth Street NE, Suite 300
Post Office Box 1288
Charlottesville, VA 22902
Ph: (434) 977-2509
Fax: (434) 980-2258
*jblank@mcguirewoods.com*
*tcheckovich@mcguirewoods.com*

Angela A. Ciolfi
Patrick S. Levy-Lavelle
Mario D. Salas
Legal Aid Justice Center
1000 Preston Avenue, Suite A
Charlottesville, VA 22903
Ph: (434) 529-1810
Fax: (434) 977-0558
*angela@justice4all.org*
*pat@justice4all.org*
*mario@justice4all.org*

Leslie Kendrick
580 Massie Road
Charlottesville, VA  22903
Ph: (434) 243-8633
Fax: (434) 924-7536
*kendrick@virginnia.edu*

*Counsel for Appellants*

57

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

- This brief contains 12,972 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) because:

- This brief has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

/s/ Jonathan T. Blank

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2017, I electronically filed the foregoing

Opening Brief of Appellants with the Clerk of this Court using the CM/ECF

System, which will send a notification of electronic filing to all counsel of record

who are registered CM/ECF users, including counsel for Appellee.


/s/ Jonathan T. Blank_____

<u>**ADDENDUM:  STATUTES INVOLVED**</u>

Pursuant to Federal Rule of Appellate Procedure 28(f), the Debtors submit

this Addendum containing the "relevant parts" of the statutes necessary to the

resolution of the issues presented by this appeal.

## <u>Va. Code § 19.2-354</u>

A.   Whenever (i) a defendant, convicted of a traffic infraction or a violation of
any criminal law of the Commonwealth or of any political subdivision
thereof, or found not innocent in the case of a juvenile, is sentenced to pay a
fine, restitution, forfeiture or penalty and (ii) the defendant is unable to make
payment of the fine, restitution, forfeiture, or penalty and costs within 30
days of sentencing, the court shall order the defendant to pay such fine,
restitution, forfeiture or penalty and any costs which the defendant may be
required to pay in deferred payments or installments. The court assessing the
fine, restitution, forfeiture, or penalty and costs may authorize the clerk to
establish and approve individual deferred or installment payment
agreements. If the defendant owes court-ordered restitution and enters into a
deferred or installment payment agreement, any money collected pursuant to
such agreement shall be used first to satisfy such restitution order and any
collection costs associated with restitution prior to being used to satisfy any
other fine, forfeiture, penalty, or cost owed. Any payment agreement
authorized under this section shall be consistent with the provisions of §
19.2-354.1, including any required minimum payments or other required
conditions. The requirements set forth in § 19.2-354.1 shall be posted in the
clerk's office and on the court's website, if a website is available. As a
condition of every such agreement, a defendant who enters into an
installment or deferred payment agreement shall promptly inform the court
of any change of mailing address during the term of the agreement. If the
defendant is unable to make payment within 90 days of sentencing, the court
may assess a one-time fee not to exceed $10 to cover the costs of
management of the defendant's account until such account is paid in full.
This one-time fee shall not apply to cases in which costs are assessed
pursuant to § 17.1-275.1, 17.1-275.2, 17.1-275.3, 17.1-275.4, 17.1-275.7,
17.1-275.8, or 17.1-275.9. Installment or deferred payment agreements shall
include terms for payment if the defendant participates in a program as

60

provided in subsection B or C. The court, if such sum or sums are not paid in full by the date ordered, shall proceed in accordance with § 19.2-358.

B.    When a person sentenced to the Department of Corrections or a local correctional facility owes any fines, costs, forfeitures, restitution or penalties, he shall be required as a condition of participating in any work release, home/electronic incarceration or nonconsecutive days program as set forth in § 53.1-60, 53.1-131, 53.1-131.1, or 53.1-131.2 to either make full payment or make payments in accordance with his installment or deferred payment agreement while participating in such program. If, after the person has an installment or deferred payment agreement, the person fails to pay as ordered, his participation in the program may be terminated until all fines, costs, forfeitures, restitution and penalties are satisfied. The Director of the Department of Corrections and any sheriff or other administrative head of any local correctional facility shall withhold such ordered payments from any amounts due to such person. Distribution of the money collected shall be made in the following order of priority to:

1.    Meet the obligation of any judicial or administrative order to provide support and such funds shall be disbursed according to the terms of such order;

2.    Pay any restitution as ordered by the court;

3.    Pay any fines or costs as ordered by the court;

4.    Pay travel and other such expenses made necessary by his work release employment or participation in an education or rehabilitative program, including the sums specified in § 53.1-150; and

5.    Defray the offender's keep.

The balance shall be credited to the offender's account or sent to his family in an amount the offender so chooses.

The Board of Corrections shall promulgate regulations governing the receipt of wages paid to persons participating in such programs, the withholding of payments and the disbursement of appropriate funds.

C.    The court shall establish a program and may provide an option to any person upon whom a fine and costs have been imposed to discharge all or part of the fine or costs by earning credits for the performance of community service work before or after imprisonment. The program shall specify the

61

rate at which credits are earned and provide for the manner of applying earned credits against the fine or costs. The court shall have such other authority as is reasonably necessary for or incidental to carrying out this program.

D.    When the court has authorized deferred payment or installment payments, the clerk shall give notice to the defendant that upon his failure to pay as ordered he may be fined or imprisoned pursuant to § 19.2-358 and his privilege to operate a motor vehicle will be suspended pursuant to § 46.2-395.

E.    The failure of the defendant to enter into a deferred payment or installment payment agreement with the court or the failure of the defendant to make payments as ordered by the agreement shall allow the Tax Commissioner to act in accordance with § 19.2-349 to collect all fines, costs, forfeitures and penalties.

## Va. Code § 46.2-395

A.    Any person, whether licensed by Virginia or not, who drives a motor vehicle on the highways in the Commonwealth shall thereby, as a condition of such driving, consent to pay all lawful fines, court costs, forfeitures, restitution, and penalties assessed against him for violations of the laws of the Commonwealth; of any county, city, or town; or of the United States. For the purpose of this section, such fines and costs shall be deemed to include any fee assessed by the court under the provisions of § 18.2-271.1 for entry by a person convicted of a violation of § 18.2-51.4 or 18.2-266 into an alcohol safety action program.

B.    In addition to any penalty provided by law and subject to the limitations on collection under §§ 19.2-340 and 19.2-341, when any person is convicted of any violation of the law of the Commonwealth or of the United States or of any valid local ordinance and fails or refuses to provide for immediate payment in full of any fine, costs, forfeitures, restitution, or penalty lawfully assessed against him, or fails to make deferred payments or installment payments as ordered by the court, the court shall forthwith suspend the person's privilege to drive a motor vehicle on the highways in the Commonwealth. The driver's license of the person shall continue suspended until the fine, costs, forfeiture, restitution, or penalty has been paid in full. However, if the defendant, after having his license suspended, pays the reinstatement fee to the Department of Motor Vehicles and enters into an

62

agreement under § 19.2-354 that is acceptable to the court to make deferred payments or installment payments of unpaid fines, costs, forfeitures, restitution, or penalties as ordered by the court, the defendant's driver's license shall thereby be restored. If the person has not obtained a license as provided in this chapter, or is a nonresident, the court may direct in the judgment of conviction that the person shall not drive any motor vehicle in Virginia for a period to coincide with the nonpayment of the amounts due.

C. Before transmitting to the Commissioner a record of the person's failure or refusal to pay all or part of any fine, costs, forfeiture, restitution, or penalty or a failure to comply with an order issued pursuant to § 19.2-354, the clerk of the court that convicted the person shall provide or cause to be sent to the person written notice of the suspension of his license or privilege to drive a motor vehicle in Virginia, effective 30 days from the date of conviction, if the fine, costs, forfeiture, restitution, or penalty is not paid prior to the effective date of the suspension as stated on the notice. Notice shall be provided to the person at the time of trial or shall be mailed by first-class mail to the address certified on the summons or bail recognizance document as the person's current mailing address, or to such mailing address as the person has subsequently provided to the court as a change of address. If so mailed on the date of conviction or within five business days thereof, or if delivered to the person at the time of trial, such notice shall be adequate notice of the license suspension and of the person's ability to avoid suspension by paying the fine, costs, forfeiture, restitution, or penalty prior to the effective date. No other notice shall be required to make the suspension effective. A record of the person's failure or refusal and of the license suspension shall be sent to the Commissioner if the fine, costs, forfeiture, restitution, or penalty remains unpaid on the effective date of the suspension specified in the notice or on the failure to make a scheduled payment.

C1. Whenever a person provides for payment of a fine, costs, forfeiture, restitution or penalty other than by cash and such provision for payment fails, the clerk of the court that convicted the person shall cause to be sent to the person written notice of the failure and of the suspension of his license or privilege to drive in Virginia. The license suspension shall be effective 10 days from the date of the notice. The notice shall be effective notice of the suspension and of the person's ability to avoid the suspension by paying the full amount owed by cash, cashier's check or certified check prior to the effective date of the suspension if the notice is mailed by first class mail to the address

63

provided by the person to the court pursuant to subsection C or § 19.2-354. Upon such a failure of payment and notice, the fine, costs, forfeiture, restitution or penalty due shall be paid only in cash, cashier's check or certified check, unless otherwise ordered by the court, for good cause shown.

D.    If the person pays the amounts assessed against him subsequent to the time the suspended license has been transmitted to the Department, and his license is not under suspension or revocation for any other lawful reason, except pursuant to this section, then the Commissioner shall return the license to the person on presentation of the official report of the court evidencing the payment of the fine, costs, forfeiture, restitution, or penalty.

E.    Any person otherwise eligible for a restricted license may petition each court that suspended his license pursuant to this section for authorization for a restricted license. A court may, upon written verification of employment and for good cause shown, authorize the Department of Motor Vehicles to issue a restricted license to operate a motor vehicle for any of the purposes set forth in subsection E of § 18.2-271.1. No restricted license may be issued unless each court which suspended the person's license pursuant to this section provides authorization for a restricted license. Such restricted license shall not be issued for more than a six-month period. No restricted license issued pursuant to this subsection shall permit a person to operate a commercial motor vehicle as defined in the Commercial Driver's License Act (§ 46.2-341.1 et seq.).

The court shall forward to the Commissioner a copy of its authorization entered pursuant to this section, which shall specifically enumerate the restrictions imposed and contain such information regarding the person to whom such a license is issued as is reasonably necessary to identify the person. The court shall also provide a copy of its authorization to the person, who may not operate a motor vehicle until receipt from the Commissioner of a restricted license. A copy of the restricted license issued by the Commissioner shall be carried at all times while operating a motor vehicle. Any person who operates a motor vehicle in violation of any restrictions imposed pursuant to this section shall be punished as provided in subsection C of § 46.2-301.

F.    Notwithstanding any other provision of law imposing a license suspension, revocation, or forfeiture against a person whose license is suspended pursuant to this section, the period of suspension imposed under this section

64

shall run concurrently with any other license suspension, revocation, or forfeiture imposed.